MICHAEL FONTANELLA ET AL. *v.* FRANK S.
MARCUCCI ET AL.
(AC 24725)

Lavery, C. J., and Flynn and Mihalakos, Js.

Argued October 25, 2004—officially released June 21, 2005

*Timothy C. Moynahan*, with whom was *Jason M. Lipsky*, for the appellants (plaintiffs).

*Louis B. Blumenfeld*, with whom was *Lorinda S. Coon*, for the appellees (defendants).

FLYNN, J. In this legal malpractice action, the plaintiffs, Michael Fontanella and his mother, Rose Fontanella, appeal from the judgment of the trial court granting the motion by the defendants, Frank S. Marcucci and John Acampora, for summary judgment. Specifically, the plaintiffs claim that the court acted improperly when it determined that the pendency of their underlying product liability action did not toll the statutes of limitation with regard to their malpractice and breach of contract claims.[1] We reverse the judgment of the trial court. We conclude that because of the complexity of the legal and factual issues arising out of the spoliation of evidence relating to the product liability claim, the legal malpractice claim was not capable of being adjudicated by the judicial power until the underlying product liability claim was resolved by final judgment.

The following facts and procedural history, as reflected in the record, are relevant to this appeal.[2] In

---

[1] The plaintiffs also claim that (1) the trial court violated the Connecticut constitution when it applied the statutes of limitation, General Statutes §§ 52-576, 52-577 and 52-581, to bar their legal malpractice cause of action, (2) the trial court acted improperly when it determined that the relation back doctrine did not apply and (3) the accidental failure of suit statute, General Statutes § 52-592, applies to this action. Because we conclude that the statutes of limitation are tolled, we do not address these claims.

[2] We summarize the procedural timelines as follows:

| PRODUCT LIABILITY | LEGAL MALPRACTICE |
|---|---|
| **December 18, 1991—**Michael Fontanella was injured in an automobile accident. | |
| **On or about January 3, 1992—**Defendant attorneys retained by plaintiffs to handle the product liability action. | |
| **On or about January 14, 1992—**Plaintiff's automobile was sold by insurance carrier and destroyed. | |

**By March 9, 1993**—Plaintiffs retained new counsel to replace defendants.

**August 25, 1994**—Plaintiffs file suit for both legal malpractice against Marcucci and the law firm of Cohen & Acampora, and for product liability against Chrysler Corporation and Disch Motor Group, Inc.

**August 25, 1994**—Plaintiffs file suit for both legal malpractice against Marcucci and the law firm of Cohen & Acampora, and for product liability against Chrysler Corporation and Disch Motor Group, Inc.

**June 24, 1997**—*Mayer* v. *Biafore, Florek & O'Neill*, 45 Conn. App. 554, 696 A.2d 1282 (1997), rev'd, 245 Conn. 88, 713 A.2d 1267 (1998), holds that a legal malpractice claim, when there was no decision on whether the lawyer failed to file the underlying action within the statute of limitations, was not ripe for adjudication.

**September 18, 1997**—Our Supreme Court grants petition for certification in *Mayer* v. *Biafore, Florek & O'Neill*, 243 Conn. 912, 701 A.2d 331 (1997).

**November 4, 1997**—*Zoarski, J.*, dismisses present malpractice action as nonjusticiable because of the pending product liability action. No appeal was filed.

**On or about October 14, 1998**—Second malpractice action against Marcucci and Cohen & Acampora filed.

**June 8, 1998**—Our Supreme Court decides *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 713 A.2d 1267 (1998), reversing *Mayer* v. *Biafore, Florek & O'Neill*, supra, 45 Conn. App. 554.

**February 2, 1999**—*Fracasse, J.*, renders summary judgment in favor of defendants because there was no evidence to suggest that the seatbelt was defective.

December, 1991, Michael Fontanella, then a minor, was involved in a single automobile collision when he drove his mother's car off the road and struck a tree. Michael Fontanella and his mother retained Marcucci, of the law firm of Cohen & Acampora, to bring a statutory product liability action against Chrysler Corporation, the manufacturer of the car involved in the collision, and Disch Motor Group, Inc., the seller of the car, for injuries Michael Fontanella sustained due to a faulty seatbelt. Before the vehicle's seatbelts were inspected properly, Rose Fontanella sold the vehicle to her insurer, allegedly on the advice of Marcucci, and it subsequently was destroyed, making the seatbelt unavailable for evidence. In 1994, the plaintiffs brought suit against Chrysler Corporation and Disch Motor Group, Inc., for product liability and against Marcucci and Cohen & Acampora for legal malpractice in connec-

**February 5, 1999**—*Silbert, J.*, dismisses action against Cohen & Acampora for lack of in personam jurisdiction.

**1999**—Plaintiffs file notice of appeal.

**July 15, 1999**—*Silbert, J.*, dismisses action against Marcucci as nonjusticiable because appeal had been taken to the Appellate Court.

**October 24, 2000**—Appellate Court affirms summary judgment for defendants in *Fontanella* v. *Chrysler Corp.*, 60 Conn. App. 903, 759 A.2d 1056 (2000).

**February 22, 2001**—Present malpractice action against defendants filed.

**September 23, 2003**—*Wiese, J.*, renders summary judgment for defendants on ground that the statutes of limitation barred the malpractice action.

tion with the spoliated evidence. On November 4, 1997, the court, *Zoarski, J.*, citing *Mayer* v. *Biafore, Florek & O'Neill*, 45 Conn. App. 554, 696 A.2d 1282 (1997), rev'd, 245 Conn. 88, 713 A.2d 1267 (1998), dismissed all counts pertaining to Marcucci and Cohen & Acampora as non-justiciable because of the pending product liability action. No appeal was brought from Judge Zoarski's decision, and it therefore became a final judgment on November 24, 1997.[3]

In 1998, the plaintiffs again brought a legal malpractice action against Marcucci and Cohen & Acampora. The product liability portion of the plaintiffs' complaint in the underlying case eventually was resolved by summary judgment in favor of the defendants, and we affirmed the summary judgment in *Fontanella* v. *Chrysler Corp.*, 60 Conn. App. 903, 759 A.2d 1056 (2000). Because the appeal regarding the product liability case was pending, on July 15, 1999, the court, *Silbert, J.*, dismissed the action against Marcucci as premature and thus not justiciable, and dismissed the action against Cohen & Acampora for lack of in personam jurisdiction. As to the action against Marcucci, Judge Silbert rea-

---

[3] The Appellate Court had decided on June 24, 1997, in an unrelated case that in a legal malpractice claim where there was no decision on whether the defendant lawyer failed to file the underlying action within the statute of limitations, the case was not ripe for adjudication. *Mayer* v. *Biafore, Florek & O'Neill*, supra, 45 Conn. App. 554. By the time Judge Zoarski rendered his November 4, 1997 decision, our Supreme Court, more than a month earlier, on September 18, 1997, had granted the petition for certification to appeal from the Appellate Court's decision in *Mayer* v. *Biafore, Florek & O'Neill*, 243 Conn. 912, 701 A.2d 331 (1997), on the following issue: "Did the Appellate Court properly affirm the judgment of the trial court dismissing the plaintiff's legal malpractice complaint on the ground that the claim was not ripe for adjudication?" Id. Thus, the plaintiff was on notice that our Supreme Court was reviewing the issue as to whether the underlying case in a legal malpractice claim must go to final judgment before the legal malpractice claim could be justiciable. Our Supreme Court held on appeal that an actual controversy existed and that the trier of fact hearing the plaintiff's malpractice action must determine whether the underlying action was time barred. *Mayer* v. *Biafore, Florek & O'Neill*, supra, 245 Conn. 88.

soned that unlike *Mayer*, the spoliation of evidence issues were much more legally and factually complex, so that the underlying product liability case would have to be resolved by appeal before the legal malpractice case could be justiciable. No appeal was filed, and the judgment became final on August 4, 1999.

In 2001, for the third time, the plaintiffs again brought a legal malpractice action against Marcucci and Acampora for negligently failing to obtain and preserve the vehicle for inspection concerning the alleged seatbelt failure. The defendants' answer to the plaintiffs' complaint denied the allegation of negligence and asserted special defenses that the third action brought against them was barred by the statute of limitations, General Statutes § 52-577, which requires that an action in tort be brought within three years from the act or omission complained of. Alternatively, the special defense pleaded that General Statutes § 52-576, which requires that an action for breach of a fully performed contract be brought within six years after the right of action accrues, and General Statutes § 52-581, which requires that actions based on breach of an executory oral contract be brought within three years after the right of action accrues, also barred the action. In 2003, the court, *Wiese, J.*, rendered summary judgment for the defendants, reasoning that the action was barred by the statutes of limitation. A fair summary of the court's reasons for granting the motion for summary judgment under both the tort and contract statutes asserted as special defenses is that the tort statute required the counts of the plaintiffs' complaint to be brought within three years of the act or omission of which the plaintiffs complained. This act or omission could have occurred no later than March of 1993 when the plaintiffs retained new counsel to replace the defendants, and the third action had been brought "well beyond" the three year period provided in the statute. With respect to the con-

tract count, the court thus concluded that the applicable statute of limitations required the action to be brought within six years of the accrual of the action and because the defendants' representation of the plaintiffs ended in the spring of 1993, the breach could not have occurred thereafter. The court concluded that the plaintiffs' cause of action accrued nearly eight years prior to the commencement of the present action, well outside the six year limitations period. The court rejected the plaintiffs' argument that the statutes of limitation had been tolled and stated: "The fact that the plaintiffs had brought an earlier, unsuccessful malpractice action or that the court had dismissed that action as nonjusticiable does not toll the running of the limitations period and has no bearing on this court's present application of § 52-577. The plaintiffs have provided no case law supporting an argument that the nonjusticiability of a cause of action acts to toll the relevant limitations period. To the contrary, in cases affirming a court's dismissal of an action for want of subject matter jurisdiction, our appellate courts have recognized that § 52-577 may bar a cause of action before it accrues. See *American Premier Underwriters, Inc.* v. *National Railroad Passenger Corp.*, 47 Conn. App. 384, 389 n.10, 704 A.2d 243 (1997), cert. denied, 244 Conn. 901, 710 A.2d 174 (1998). This is the result in the present matter." This appeal followed.

The plaintiffs claim that the court improperly dismissed their malpractice and breach of contract claims by deciding that the statutes of limitation had run and the pendency of the product liability action did not toll the statutes of limitation, §§ 52-576, 52-577 and 52-581.[4] We agree.

---

[4] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

"The standard of review of decisions granting motions for summary judgment is well settled. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"[A]s a general rule, summary judgment may be rendered where the claim is barred by the statute of limitations. . . . Because the matter of whether a party's claim is barred by the statute of limitations is a question of law, we review the [plaintiff's claim] de novo. . . .

"On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citation omitted; internal quotation marks omitted.) *Lind-Larsen* v. *Fleet National Bank of Connecticut*, 84 Conn. App. 1, 8–9, 852 A.2d 799, cert. denied, 271 Conn. 940, 861 A.2d 514 (2004).

There does not seem to be any factual dispute that the plaintiffs' automobile was sold on January 14, 1992, or that the present action was not commenced by service of process until January 24, 2001, against Marcucci, and February 14, 2001, against Acampora, almost nine years after the car was sold, well beyond the three year tort or six year contract statutes of limitation. The action therefore would be time barred unless the

General Statutes § 52-581 (a) provides: "No action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues."

statutes of limitation were tolled. We therefore address the plaintiffs' contention that the action was tolled because it is the dispositive issue.

"The tolling of a statute of limitations may potentially overcome a statute of limitations defense. When a statute of limitations is tolled, it does not run and the time during which the statute is tolled is considered, in effect, as not having occurred. Therefore, if a statute in a particular case is tolled, it is as if the statute commenced on a later date." A. Levy, Solving Statute of Limitations Problems (1987) § 5.14, p. 195.

Judges Zoarski and Silbert had dismissed the first two legal malpractice actions because they were non-justiciable until the product liability action was resolved. "A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citation omitted; internal quotation marks omitted.) *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 91, 713 A.2d 1267 (1998).

We find our Supreme Court's reasoning in *Perzanowski* v. *New Britain*, 183 Conn. 504, 440 A.2d 763 (1981), persuasive because the logical consequence of its holding is that if a prior action does prevent enforcement of a remedy sought in a later action, then the pendency of the prior action can toll the pertinent statute of limitations applicable to the later action. In *Perzanowski*, the plaintiff brought an action in federal court, claiming a civil rights violation under 42 U.S.C. § 1983. The federal suit was dismissed because the city was not amenable to suit under the statute. Id., 505. Nearly four years

later, the plaintiff filed a tort action in state court against the city regarding the same matter. Id. Our Supreme Court held: "Where two distinct causes of action arise from the same wrong, each is controlled by the statute of limitations appropriate to it. . . . Thus, the pendency of the civil rights action in federal court did not operate to suspend the running of the time limit set out in § 52-577. . . . We need not speculate whether a state action filed after the federal action would have been stayed. *So long as the pendency of the prior action does not prevent enforcement of the remedy sought in the later action, the pendency of the first action will not toll the statute of limitations for the second action.*" (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 506.

It logically follows that, under *Perzanowski*, *if the prior action does prevent enforcement of the remedy sought in the later action, then the pendency of the prior action can toll the statute of limitations in the later action.* In this case, the viability of the malpractice and contract claims was contingent on the outcome of the underlying product liability case. To recover on a legal malpractice claim, the plaintiff must establish: "(1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) *damages.* 4 R. Mallen & J. Smith, Legal Malpractice (4th Ed. 1996) § 32.9, pp. 172–74." (Emphasis added.) *Mayer* v. *Biafore, Florek & O'Neill,* supra, 245 Conn. 92. Likewise, the viability of the contract case also was contingent on the outcome of the underlying product liability case. To recover for breach of contract, the plaintiffs must establish "the formation of an agreement, performance by one party, breach of the agreement by the other party and [resulting] *damages.*" (Emphasis added; internal quotation marks omitted.) *Rosato* v. *Mascardo,* 82 Conn. App. 396, 411, 844 A.2d 893 (2004). If the plaintiffs had prevailed in their product

liability claim and their recovery was not in any way diminished, nor were their legal and related expenses increased by virtue of any alleged delict on the part of the defendants, then no damages could have been proximately caused by the defendants. Put another way, the issues of causation and damages in the malpractice claim and damages in the contract claim could not be resolved during the pendency of the underlying product liability action. We conclude that the plaintiffs could not obtain a remedy in the legal malpractice case until there was a final judgment in the underlying case and that, under *Perzanowski*, the statutes of limitation in the malpractice case must toll.

The defendants contend that *Mayer* militates against tolling. We do not agree. In *Mayer*, the plaintiff sought to recover for legal malpractice on the ground that his former attorney failed to file the underlying action within the appropriate statute of limitations. Our Supreme Court held that an actual controversy existed in the malpractice suit, reasoning that "[t]o prove causation and damages here the plaintiff must establish that the defendants' failure to file [the underlying action] within the statute of limitations period caused him harm because [the underlying action] is now time barred." *Mayer* v. *Biafore, Florek & O'Neill*, supra, 245 Conn. 92. The court also held that it was not necessary for the plaintiff to obtain a separate judicial determination as to whether the underlying action was time barred before bringing the malpractice action.

Here, we are now faced with the question of whether the pendency of the product liability action tolled the statutes of limitation in the malpractice and contract actions; in other words, whether *Mayer* applies. We conclude on the basis of the policy behind *Mayer*, that it does not control in the present case so as to prevent the tolling of the statutes of limitation.[5]

---

[5] Some authority suggests that *Mayer* is limited and applies only in cases where the statute of limitations arguably has run on the underlying case. 4

In *Mayer*, our Supreme Court explained its basis for concluding that a prior determination that the underlying action was time barred was not a condition precedent to the ripeness of the malpractice claim: "To require the plaintiff to obtain a separate ruling that his uninsured motorist action is time barred does not further judicial economy. We should not, unnecessarily, add extra cases to the already overcrowded court dockets. All legal malpractice cases are based on underlying rights, for which the plaintiff originally sought legal representation. To require that the underlying dispute as to those rights, in *all* cases, must be completely resolved prior to bringing a malpractice action would unduly restrict the plaintiff's remedy against the allegedly negligent lawyer." (Emphasis added.) Id., 92. We regard our Supreme Court's use of the term "all" as significant. The clear implication of its language is that there may be some cases in which the underlying causes of action must be resolved before a malpractice claim can be justiciable.

One reason that our Supreme Court in *Mayer* did not require adjudication of the underlying claim *in all cases* was because it did not want to restrict unduly the plaintiff's remedy against a negligent lawyer. Id. If it were determined that the malpractice claim was not ripe in *Mayer* because there was no determination that the underlying action was time barred, then the plaintiff would be forced to bring suit to obtain such a judicial determination. That would restrict the plaintiff's remedy. Unlike *Mayer*, where the *plaintiffs* claimed that the malpractice case was ripe and the *defendants* claimed that it was not, in the present case, the *plaintiffs*, in essence, are the parties claiming on appeal that the malpractice case was not ripe until there was a final

R. Mallen & J. Smith, Legal Malpractice (5th Ed. 2000) § 30-17, pp. 495–96 ("client . . . need not first obtain an adjudication that the statute of limitations has run on the underlying claim").

adjudication on the underlying case. This distinction, at least with regard to the present case, makes a difference. To apply *Mayer* broadly to encompass all legal malpractice claims, even though our Supreme Court did not, and conclude that the action was ripe at anytime before the underlying case was resolved by the decision in *Fontanella* v. *Chrysler Corp.*, supra, 60 Conn. App. 903, would circumvent the reasoning behind *Mayer*, which is to avoid unduly restricting the plaintiff's remedy against an already negligent lawyer. Furthermore, in this case, if the malpractice and product liability cases were brought at the same time, and the malpractice action advanced more quickly, it would be possible that the plaintiff could prevail first on the malpractice claim and then on the product liability claim; such a result would be absurd.

The malpractice suit in the present case was not ripe until the damage due to the failure to preserve the seatbelt was evident. The damage occurred, if at all, when Judge Fracasse's summary judgment in favor of the product liability defendants was affirmed on appeal. Therefore, unlike *Mayer*, the present malpractice case was not ripe until the pending underlying action was resolved.[6] Another reason for this distinction is that in *Mayer* the question in the underlying case was whether the statute of limitations had run, which is a question of law; see, e.g., *Lenares* v. *Miano*, 74 Conn. App. 324, 330, 811 A.2d 738 (2002); whereas, in the present case,

[6] The court, *Wiese, J.*, cited *American Premier Underwriters, Inc.*, as authority explaining why the plaintiffs' malpractice claim was barred by the statute of limitations. We acknowledge that "a statute of repose may on occasion operate to bar an action even before it accrues." *American Premier Underwriters, Inc.* v. *National Railroad Passenger Corp.*, supra, 47 Conn. App. 389 n.10. However, the question in the present case is not whether the malpractice action has accrued. Therefore, under General Statutes § 52-577, an occurrence statute, the act or omission occurred no later than March, 1993, when the plaintiff retained new counsel to replace the defendants. The issue, therefore, is not one of accrual, but, rather, of tolling.

the question in the underlying case was whether the seatbelt was defective, which is a question of fact. See, e.g., *Sharp* v. *Wyatt, Inc.*, 31 Conn. App. 824, 834, 627 A.2d 1347 (1993), aff'd, 230 Conn. 12, 644 A.2d 871 (1994).

Furthermore, the plaintiffs' product liability complaint alleged both design defect and manufacturing defect. Had the plaintiffs alleged only a design defect, the liability of the manufacturer or seller would arise out of defective design of all such seatbelts. In evaluating a design defect, the continued availability of the particular vehicle's belt involved in the collision, which gave rise to the litigation, might be less important because the defective design might be ascertained and proven by reference to any such seatbelt designed because the defect could be common to all such devices designed at that time. Therefore, for design defects, examination of a similar model might suffice. *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 781, 675 A.2d 829 (1996). On the other hand, where a manufacturing defect is alleged, rather than a design defect, the defect is not necessarily common to all such seatbelts and, as Judge Silbert observed, the issues here are more complex factually than those presented where there was no dispute about when the harm occurred. Therefore, the running of the statutes of limitation had presented a question of law. Whether the plaintiff could or could not prove liability on the part of the manufacturer or product seller, despite spoliation of the seatbelt at issue, was not simply a question of law.[7]

---

[7] The plaintiffs, in opposition to the defendants' motion for summary judgment, included the affidavits of two experts. Marvin Specter, an experienced engineer, stated, on the basis of photographs of the vehicle before it was destroyed and statements of various witnesses, that the seatbelt was defective. Edmund Sullivan, in his affidavit, reconstructed the accident on the basis of photographs, the accident scene, the police report and interviews, and stated that, given the velocity of the vehicle at impact, a properly restrained occupant would expect little if any injury.

The effect of the spoliation of the evidence and whether it caused an inability to prevail on the product liability claim was a more complex question than whether the defendant's attorney in *Mayer* timely had filed a lawsuit within the time prescribed by the statute of limitations. The legal malpractice claim was not ripe for adjudication and therefore not justiciable until a final judgment was rendered determining that the plaintiffs could not prevail in the product liability action. It would then be for a jury to decide whether the plaintiff's failure to successfully prosecute the product liability claim was due to their former attorneys' negligence.

The judgment is reversed and the case remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.